[Civ. No. 19429. First Dist., Div. Two. Dec. 16, 1960.]

Guardianship of the Person and Estate of LORNA D. NEWELL, a Minor. ROBERT J. NEWELL, Respondent, v. JOY N. VODOPICH, Appellant.

George W. Hauer for Appellant.

Nevo F. Capitina for Respondent.

SHOEMAKER, J.—This is an appeal by Joy Vodopich from an order appointing Robert J. Newell Guardian of the Person and Estate of Lorna D. Newell, a minor.

Inasmuch as the attack upon the judgment turns largely upon the sufficiency of the evidence, we set forth the facts in detail.

Robert J. Newell is the grandfather of the minor; Lorna Newell is the illegitimate child of appellant and was born on December 19, 1952, at which time appellant was 15 years of age. The child has lived with respondent, the appellant's father, and his wife, from the time of her birth to the present.

The appellant remained with the child and her father for three months following its birth, during which time the testimony indicates she neither loved nor cared for it, and further stated she did not want the baby. She left the following April, stating that she never wanted to see the child again, that she could not be bothered with it, and she would not try to take it from respondent and his wife.

Appellant married a young man named Costello; the marriage was annulled shortly thereafter. In 1954 she married Bob Lara. Late in 1955 appellant wrote to respondent stating that she wanted the child. Respondent asked her to come visit for a while before taking the child, so that she could become acquainted with her. There was testimony to the effect that appellant did not care for the child during her visit and in a short time became bored with her, and further that she whipped the girl with a coat hanger during the stay. Her husband, Bob Lara, told her she had no love for the child, and they left without asking for the girl.

The marriage with Lara broke up, and appellant married her present husband, Thomas Vodopich, on March 10, 1957.

Appellant admitted she had been drunk on several occasions, but stated that although she still drinks, it is not to excess. She admitted having intercourse with men other than her husbands since the child's birth, but stated there had been no extramarital relations within the last five years. She denied that she did not want her child or intended to abandon it.

Appellant only visited the child three times during her first three years. She has never sent any money for the care of the child, and the only gifts have been a tricycle in 1954, and some wearing apparel recently.

There is general agreement that the child is well adjusted, loves her grandfather and his wife, and has been properly raised. The child herself states she desires to remain with respondent.

█ In applying the law to this subject we start with the premise set forth in our Civil Code, section 200, that the mother of an illegitimate child is entitled to its custody. (*Strong* v. *Owens* (1949), 91 Cal.App.2d 336, 340 [205 P.2d 48]; *In re Croze* (1956), 145 Cal.App.2d 492, 495 [302 P.2d 595].) ██ Further, it is the settled law of this state that the parent of a minor child under 14 has a preferential right to be appointed guardian, and the court must recognize this right unless it finds the parent incompetent or unless such parent has knowingly or willfully abandoned the child.

(*Estate of Moore* (1918), 179 Cal. 302, 304 [176 P. 461]; *Estate of Wise* (1918), 179 Cal. 423, 425 [177 P. 277]; *In re Croze, supra.*) In the present case, the trial court has found that the appellant was not a fit and competent person to be guardian of the child, and that she abandoned the child.

Initially it should be noted that the determination of guardianship from the evidence is a question largely in the discretion of the court below. (*Estate of Bedford* (1910), 158 Cal. 145, 147 [110 P. 302].) The appeal, therefore, raises a question of whether the evidence sufficed to support the finding of the trial court.

Looking to the question of abandonment first, to constitute such there must be an actual abandonment, accompanied by an intention to entirely sever, so far as it is possible to do so, the parental relationship, and throw off all obligations arising out of the same. The mere fact of separation for several years while the parent permits the child to be raised by others does not in itself establish abandonment. (*Estate of Moore, supra* at 305; *Estate of Wise, supra*; *Matter of Schwartz* (1915), 171 Cal. 633, 635 [154 P. 304]; *In re Green* (1923), 192 Cal. 714, 720 [221 P. 903]; *In re Croze, supra.*)

Intent is the decisive factor, and it may be shown by the facts and circumstances. (*Guardianship of Marshall* (1954), 124 Cal.App.2d 807, 810 [269 P.2d 160, 936].)

Statements made by a parent, similar to those by appellant here, that is, that she does not like or want her child, or will not retake it from those in whose custody it is left, have warranted the conclusion of intent to abandon. (*In re Vance* (1891), 92 Cal. 195, 197 [28 P. 229]; *In re Lew Choy Foon* (1916), 173 Cal. 159, 162 [159 P. 440].) The fact that the mother was only 15 years old when she made these statements would seem to mitigate against their impact; however, her course of conduct over the years which followed substantiates a determination that her intent was to abandon the child. Her visits to the child were very infrequent, and she only made two gifts to the child in its seven years. She once expressed a desire to have the child, four years before the present litigation. During a period designed to enable the parent and child to become acquainted, the testimony of the child's custodians indicates the appellant neglected the girl and left without asking to take the child with her. Although failure to support the child does not in itself constitute abandonment (*In re Green, supra* at 719), it is a factor which bears on abandonment. (*In re Vance, supra.*) The

appellant denied in court that she did not want the child, or abandoned it, but such declarations of the parent do not control determination of intent. (*Guardianship of Marshall, supra.*) Where as here, there is conflicting evidence on the question of abandonment, the finding of the trial court must be upheld. (*In re Lew Choy Foon, supra.*)

We are mindful of the rule that the fitness of a parent is determined as of the time of the hearing, but the trial court has wide discretion in passing on the question, and may consider evidence as to the past conduct regarding the matter. (*Guardianship of Smith* (1957), 147 Cal.App.2d 686, 693 [306 P.2d 86]; *Guardianship of Casad* (1951), 106 Cal. App.2d 134, 136 [234 P.2d 647].) Past activities before the court were appellant's marital instability, occasional intoxication, extramarital acts of intercourse, and neglect and mistreatment of her child. Separately these items would not be overly compelling towards finding her incompetent, but collectively they are weighty. Failure to support her child in itself does not compel finding appellant incompetent, but it is evidence on the question of competency. (*Matter of Forrester* (1912), 162 Cal. 493, 495 [123 P. 283].) Another factor to be looked at is the welfare of the child; it is true that the controlling factor is the parental right which is only upset when the parent is found unfit (*Guardianship of Smith, supra* at 693), but recent cases passing on competency consider the best interest of the child as bearing on the question of fitness. (*Guardianship of Smith, supra* at 696; *Guardianship of Casad, supra* at 147.) Here, the child has been brought up extremely well by respondent and desires to remain with him and his wife. These factors combine to present substantial evidence indicating the incompetency of appellant. The issue of competency is a fact question, and the trial court's finding that the parent is not fit will not be upset where there is a conflict in the evidence (*In re Lew Choy Foon, supra* at 161, 162); or where the appellant fails to make a clear showing that the evidence does not support such finding. (*Guardianship of Smith, supra* at 694.)

The order appointing guardian is affirmed.

Kaufman, P. J., and Draper, J., concurred.