[Civ. No. 25097.   Second Dist., Div. Two.   Aug. 15, 1961.]

Guardianship of the Person and Estate of STEPHEN W. TURK et al., Minors. HELEN C. TURK, Appellant, v. LE RAE McARTHUR, as Guardian, etc., Respondent.

Paul T. Erskine for Appellant.

Richards, Watson, Smith & Hemmerling and Harvey A. Howard for Respondent.

ASHBURN, J.—Contest over custody of Stephen W. Turk and Michael R. Turk, who at the time of trial were aged respectively 13 years, 11 months and 10 years, 4 months. Appellant is their paternal grandmother who has had their custody and care since May of 1955. In response to respondent-mother's claim to custody, Mrs. Turk filed a petition for appointment of herself as guardian of the persons of the two minors. The mother having opposed this application the court, after extensive hearing (reporter's transcript contains 474 pages), denied the petition for guardianship and awarded

738

custody of the two boys to the mother, Le Rae McArthur. Mrs. Turk appeals.

■■ Appellant's counsel challenges "three basic findings, viz., (1) that respondent is a fit and proper person to have the care and custody of the two minor children; (2) that the respondent never abandoned the children; and (3) that it is in the best interests of the children that they be placed in the custody of the respondent." In form his contention is insufficiency of the evidence; in fact the brief is an invitation to this court to reweigh the evidence, a thing we cannot do. Treated as a claim of insufficient evidence the brief disregards most of the settled rules for presentation of that contention.

■■ In *Davis* v. *Lucas,* 180 Cal.App.2d 407, 409 [4 Cal.Rptr. 479], we said, concerning this subject: "The appellate court starts with the presumption that the evidence sustains each finding of fact (*Gold* v. *Maxwell,* 176 Cal.App.2d 213, 217 [1 Cal.Rptr. 226]; *Cooper* v. *Cooper,* 168 Cal.App.2d 326, 331 [335 P.2d 983]), and the burden rests upon appellant 'to demonstrate that there is no substantial evidence to support the challenged findings.' (*Nichols* v. *Mitchell,* 32 Cal.2d 598, 600 [197 P.2d 550]; see also *New* v. *New,* 148 Cal.App.2d 372, 383 [306 P.2d 987]; *Cooper* v. *Cooper, supra,* at page 31, and *Gold* v. *Maxwell, supra,* at p. 233.) ■■ To this end appellant must set forth in his brief all material evidence upon the point, not merely his own proofs (*Kruckow* v. *Lesser,* 111 Cal.App.2d 198, 200 [244 P.2d 19]; *Gold* v. *Maxwell, supra,* at 233; *Cooper* v. *Cooper, supra,* at 331); if this is not done the point is deemed waived (so held in the cases just cited). Counsel in this case has made no real effort to comply with the rule. ■■ '[A] claim of insufficiency of the evidence to justify findings, consisting of mere assertion without a fair statement of the evidence, is entitled to no consideration, when it is apparent, as it is here, that a substantial amount of evidence was received on behalf of the respondents.' (*Estate of Good,* 146 Cal.App.2d 704, 706 [304 P.2d 190].) In the circumstances we are entitled to accept the statements of respondent's brief as to the evidence upon the subject. Respondent's counsel has assembled enough of the testimony in his brief to show at least a substantial conflict in the evidence. Our duty begins and ends with the determination of the existence of such a conflict. ■■ 'When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any

substantial evidence contradicted or uncontradicted which will support the finding of fact.' (*Primm* v. *Primm*, 46 Cal. 2d 690, 693 [299 P.2d 231].) We do not make an independent search of the record to uncover error. Our duty with respect to this contention of appellant is now discharged.''

Appellant's brief contains numerous transcript citations but they point invariably to the testimony of appellant or to cross-examination of respondent. No genuine effort has been made to ''set forth in his brief all material evidence upon the point, not merely his own proofs.'' As in *Davis* v. *Lucas, supra,* ''[r]espondent's counsel has assembled enough of the testimony in [her] brief to show at least a substantial conflict in the evidence.'' Hence we do not make an independent search of the record as the only real object of same would be a reweighing of the proofs.

The eminent trial judge, Honorable Julius V. Patrosso, who saw and heard the witnesses and by stipulation interviewed the boys privately, summarized the facts and issues as follows in a written memorandum of decision: ''The court is convinced that the petitioner, Mrs. Turk, at no little financial sacrifice and effort, has performed an excellent job in rearing these two fine boys and is entitled to the greatest credit therefor. She is obviously a fit person to have their custody. However, in the light of the decisions of our highest court, I am without authority to grant her petition for their guardianship unless the evidence is such as to support a finding that their mother, the objector, is *presently* unfit to have their custody. In the court's view the evidence does not warrant such a finding.

''It is true that the objector in the past has not always conducted herself in accordance with the highest moral standards, and has not manifested a great interest in her children. However, her past conduct, while not to be condoned, is not wholly without some extenuating factors. While the children were very young she was deserted by her husband, the father, and being without means she had no choice but to seek employment in order to provide for them. Her hours of employment were staggered through both the day and night, and her earnings were, to say the least, rather meager. Realizing her inability to adequately provide and care for the children, both by reason of the requirements of her employment and economic conditions, she was under the impelling necessity of finding someone to care for them. In the circumstances it

was entirely natural that she should place them with their paternal grandmother, petitioner here, or with some other relative, or in an institution.

"It is true that there appears to have been a minimum of communication between the children after they came to California with the petitioner, but it is also clear that the petitioner was quite content with this situation, and at no time made any effort to write to or encourage correspondence between the children and their mother. However, the court concludes that the mother never intended to abandon the children, but rather looked forward to a time, although perhaps in the indefinite future, when she would be in a position financially and otherwise to resume their custody. She has now attained this goal and is in a position to properly care for them. The court believes that she has a sincere affection for the children and will prove to be a good mother to them.

"Moreover while, if the welfare of the children were the controlling consideration, at the immediate present it would appear that this could best be served in permitting them to remain with the petitioner, a long range view would seem to dictate a contrary conclusion. Mrs. Turk is now 64 years of age and while she appears to be enjoying the normal good health of a person of her age, the fact remains that if she lives until Michael reaches his majority, she will have attained the age of 75 years. The mother on the other hand is a relatively young woman and hence it may reasonably be expected that she will be in a better position physically to care for the children during this critical period of their lives."

■ Counsel for appellant inveighs against the rule declared in *Stewart* v. *Stewart*, 41 Cal.2d 447, 451 [260 P.2d 44], and *Guardianship of Smith*, 42 Cal.2d 91, 92 [265 P.2d 888, 37 A.L.R.2d 867], phrased as follows in *Stewart*: "Where a parent applying for custody is in a position to take the child and is not shown to be unfit, the court may not award custody to strangers merely because it feels that they may be more fit or that they may be more able to provide financial, educational, social, or other benefits. (*Roche* v. *Roche*, 25 Cal. 2d 141, 144 [152 P.2d 999], citing *In re White*, 54 Cal.App. 2d 637, 640 [129 P.2d 706]; *Becker* v. *Becker*, 94 Cal.App.2d 830 [211 P.2d 598].) ■■ '[T]he discretionary power of a trial court necessarily is limited by those provisions of the code wherein the express policy of the Legislature regarding general questions of custody are set forth (Civ. Code, §§ 138, 197; Prob. Code, §§ 1407-1408) and by the judicial

interpretation of those code provisions in relation to the specific questions presented by the instant case.' . . . The code sections contemplate that the care of a minor child be awarded to a parent, if a fit and proper person, as against a stranger.'' While this view has been vigorously criticized in the dissenting opinions in both *Stewart* and *Smith, supra,* the latter case was considered by the court twice with the same result in each instance. (See *Guardianship of Smith,* (Cal.) 255 P.2d 761, for first opinion.) It has been uniformly followed by the District Courts of Appeal.[1] It is not for us to attempt to establish a different rule; we are bound by the Supreme Court holdings.

What we have said above disposes of these contentions of appellant: ''Award of custody to the respondent constitutes an abuse of discretion''; ''Prejudicial error by the holding, in effect, that the best interests of the minors is not the controlling consideration''; ''The doctrine of parental absolute right to custody, if not unfit, followed by the trial court constitutes judicial legislation, and is in direct conflict with legislative intent.''

Appellant also claims prejudicial error in the court's alleged ''[f]ailure to give any consideration to the preference of the minors'' and terms it ''an abuse of discretion.'' This is untenable. Section 1406, Probate Code, upon which appellant relies, says with respect to children under the age of 14 years: ''[I]f the child is of sufficient age to form an intelligent preference, the court may consider that preference in determining the question'' of guardianship. Manifestly this is not mandatory but leaves the matter to the discretion of the judge. Even the nomination of a guardian by a child over 14 years of age must be approved by the court in order to prevail (Prob. Code, § 1406), and the appointment may be made only after an initial showing of existence of sufficient cause to warrant the appointment of a guardian. *Guardianship of Kentera,* 41 Cal.2d 639, 642 [262 P.2d 317] : ''These stat-

---

[1] See *Guardianship of Willis,* 123 Cal.App.2d 446, 451 [266 P.2d 944]; *Stewart* v. *Stewart,* 130 Cal.App.2d 186, 189 [278 P.2d 441]; *Guardianship of Aviles,* 133 Cal.App.2d 277, 280 [284 P.2d 176]; *Guardianship of Wisdom,* 146 Cal.App.2d 635, 639 [304 P.2d 221]; *Guardianship of Smith,* 147 Cal.App.2d 686, 693 [306 P.2d 86]; *Guardianship of Kostors,* 167 Cal.App.2d 389, 390 [334 P.2d 305]; *Guardianship of Furr,* 167 Cal. App.2d 604, 605 [334 P.2d 936]; *Guardianship of Joaquin,* 168 Cal. App.2d 99, 101 [335 P.2d 507]; *Guardianship of Rose,* 171 Cal.App.2d 677, 679 [340 P.2d 1045]; *Darwin* v. *Ganger,* 174 Cal.App.2d 63, 70 [344 P.2d 353]; *In re Miller,* 179 Cal.App.2d 12, 17 [3 Cal.Rptr. 450]; *Guardianship of Rutherford,* 188 Cal.App.2d 202 [10 Cal.Rptr. 270].

utes, construed as a whole, require the trial court to proceed in the following manner: first, to determine whether sufficient cause (necessity or convenience) exists to warrant the appointment of a guardian; and second, *if* sufficient cause is found to exist, then to determine whether the nominee merits approval. If the court initially finds that the appointment of a guardian is not 'necessary or convenient,' then it should deny the petition whether it be made by a 'relative or other person on behalf of the minor or [by] the minor, if fourteen years of age.' (Prob. Code, § 1440.) . . . It is only *after* such showing has been made to the satisfaction of the court that the law distinguishes between the 14-year-old and the younger minor, granting to the former the right to have his nominee appointed if approved by the court as a suitable person. Otherwise, in the case of the 14-year-old, the words 'necessary or convenient' would be given no meaning, with the result that every minor attaining that age would have the absolute right to select any fit person as his personal guardian regardless of the fitness of his natural parents. The statutory provisions were not intended to upset the normal relationship of parent and child or to disrupt normal family discipline by allowing the 14-year-old minor to withdraw from the family circle at his whim. In other words, sections 1405 and 1440 apply in every case of the appointment of a guardian of a minor in that there must be the initial showing of necessity or convenience; and it is only thereafter that the right of the 14-year-old minor to have his nominee appointed his personal guardian, if fit, may be said to be 'absolute.' (Prob. Code, § 1406.) ''

The trial judge in connection with his interview of the boys in chambers made the following statement in open court: ''Let me say this to both counsel: My approach in talking to children—I don't discuss their preference at all. I try to find out what their idea is and aspirations, and what they hope for, and I let them tell me the story. I don't ask whether you would rather be with this person or that person. That isn't a bit informative. I can assume in this case if I had asked the question that they undoubtedly would have said that they would rather stay where they are, but I don't approach it from that angle. I can make up my own mind from their responses generally as to that, but just to ask them what they would rather do isn't going to be helpful to me in arriving at my ultimate conclusion. I let them do the talking. I let them tell me everything that they are thinking about,

and what they are doing, and what they hope to do, and what they told me wouldn't be controlling in any way if I asked them, and for that reason I never do." We perceive no abuse of discretion in this.

The judgment is affirmed.

Fox, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied September 5, 1961, and appellant's petition for a hearing by the Supreme Court was denied October 11, 1961. Schauer, J., and Peters, J., were of the opinion that the petition should be granted.